**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

JAMES CLAYTON                                                                                              PLAINTIFF

V.                              CASE NO. 3:19-CV-00075-JTK

ANDREW SAUL,
Commissioner of Social Security Administration[1]                            DEFENDANT

**ORDER**

**I.   Introduction:**

Plaintiff, James Clayton ("Clayton"), applied for disability benefits on January 27, 2017, alleging a disability onset date of July 3, 2015. (Tr. at 10). The claim was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Clayton's application. (Tr. at 24). The Appeals Council denied his request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Clayton has requested judicial review.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

**II.   The Commissioner's Decision:**

The ALJ found that Clayton had not engaged in substantial gainful activity during the period from his alleged onset date of July 3, 2015 through his date last insured of December 31, 2016. (Tr. at 12). The ALJ found, at Step Two of the sequential five-step analysis, that Clayton had the following severe impairments: degenerative disc disease of the cervical and lumbar spine,

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is automatically substituted as the Defendant.

[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

posttraumatic stress disorder, anxiety disorder, and depressive disorder. (Tr. at 13).

At Step Three, the ALJ determined that Clayton's impairments did not meet or equal a listed impairment. (Tr. at 13). Before proceeding to Step Four, the ALJ determined that Clayton had the residual functional capacity ("RFC") to perform work at the light level, with additional limitations. (Tr. at 14-15). He could sit for six to eight hours in an eight-hour workday and stand and/or walk for six to eight hours in an eight-hour workday, both one to two hours without interruption. *Id*. He could occasionally climb, stoop, kneel, crouch, and crawl. *Id*. He is limited to unskilled, rote activity. *Id*. He could understand, follow, and remember concrete instructions. *Id*. Contact with supervisors and coworkers should be superficial, which in this context means to meet, greet, and give simple instructions. *Id*. He should have limited contact with the public. *Id*.

The ALJ found that Clayton was unable to perform his past relevant work. (Tr. at 23). The ALJ relied on the testimony of a Vocational Expert ("VE") to find that, considering Clayton's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that he could perform. (Tr. at 24). Therefore, the ALJ found that Clayton was not disabled. *Id.*

### III.  Discussion:

  A.  Standard of Review

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence" in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). In other words, it is "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Id.* (citation omitted). The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary

outcome. The Court cannot reverse the decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

B. Clayton's Arguments on Appeal

Clayton contends that substantial evidence does not support the ALJ's decision to deny benefits. He argues that: the ALJ failed to give proper weight to treating physician opinions; the ALJ failed to fully develop the record; the RFC did not incorporate all of Clayton's limitations; and the hypothetical posed to the VE was defective so the ALJ did not carry his burden at Step Five. The hypothetical was indeed defective and not consistent with the RFC and, therefore, the ALJ erred at Step Five.

Clayton suffered from back and neck problems verified by objective medical testing (MRI showed bulging discs, foraminal narrowing, and degenerative disc disease, and range of motion in his back was restricted). (Tr. at 330-333, 356, 970). He claimed he was limited in his ability to sit, stand, and walk. (Tr. at 50-52). Based on the objective evidence, the ALJ included the following physical restrictions in the hypothetical posed to the VE:

"Sitting six to eight. Standing and walking six to eight. One to two hours interrupted." (Tr. at 55).

The VE testified that there would be jobs available based on that hypothetical. (Tr. at 55-58). The ALJ did not clarify what "one to two hours interrupted" meant; Clayton, in his brief, wondered if that meant a sit/stand option, or more than the usual number of breaks, and if so, how long those breaks would last. All of these are important questions that remained unanswered.

The more problematic issue is that in the RFC, the ALJ state that Clayton could "stand

and/or walk six to eight hours in an eight-hour workday, both one to two hours *without* interruption." (Tr. at 15). This directly conflicts with the hypothetical which says *interrupted*. (Tr. at 55). Because of this direct contradiction, the ALJ could not properly rely on the VE testimony about jobs available. While the Commissioner argues that this is harmless error, the Eighth Circuit has held that a hypothetical to a vocational expert that does not accurately set forth the petitioner's condition cannot furnish substantial evidence of the absence of a disability. *See Mitchell v. Sullivan*, 925 F.2d 247, 249-50 (8th Cir. 1991). The ALJ used an RFC which was not presented to the VE, and for this reason, his reliance on the VE testimony about jobs available was improper. The Commissioner argues that because Clayton's attorney did not ask questions about this conflict at the hearing, he waived the argument. However, the real conflict arose at the time the ALJ determined the contradictory RFC and not at the hearing; Clayton now timely raises the argument.

There is another question concerning the state-agency physicians' opinions. Both said Clayton was capable of light work, but one said that Clayton could only stand or walk for a total of two hours in an eight-hour workday. (Tr. at 92). This is indicative of sedentary, not light, work. 20 C.F.R. § 404.1567; SSR 83-10; *Young v. Saul*, 2019 U.S. Dist. 214072 n.2 (E.D. Ark., Dec. 12, 2019). The other physician said Clayton could stand or walk for six hours in an eight-hour workday. (Tr. at 107). This defines light work. 20 C.F.R. § 404.1567; SSR 83-10. Importantly, the ALJ said at the hearing that if he found Clayton capable of sedentary work he would be disabled. (Tr. at 57). But he assigned an RFC for light work, which was more than the first reviewing doctor said he could do. Because there was a conflict in the medical opinions about exertional levels, which directly affected the RFC determination, the ALJ should have

further developed the record to resolve this conflict. In general, the question of how long Clayton can stand or walk and whether he needs breaks remains in doubt, so the ALJ did not properly discharge his duty.

## IV. <u>Conclusion</u>:

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The RFC and VE hypothetical were in conflict. The decision is hereby reversed and the case remanded with instructions for further review.

IT IS SO ORDERED this 27th day of May, 2020.

_____
UNITED STATES MAGISTRATE JUDGE